KRUSE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department.    October 27, 1911.)

1. APPEAL AND ERROR (§ 1047*)—HARMLESS ERROR—CONDUCT OF TRIAL.

In an action for injuries to plaintiff who claimed that, while stealing a ride on a freight car, he was kicked therefrom by defendant's brakeman, and injured, just after plaintiff had opened his case defendant called a witness and asked him to identify his signature to a paper. The paper was not offered in evidence, and such witness was not again called by either party. *Held*, that a contention that there was reversible error, in that the witness, who was one of plaintiff's companions on the ride, was called as a device that the jury might learn that defendant had a signed statement from him and infer that it was favorable to defendant, was without merit.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1047.*]

2. WITNESSES (§ 269*)—CROSS-EXAMINATION.

Plaintiff's counsel having thereupon asked such witness whether he had not said that he did not see the accident, the question was properly excluded.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 269.*]

3. APPEAL AND ERROR (§ 1048*)—HARMLESS ERROR.

In an action for injuries to plaintiff, who claimed that, while stealing a ride on defendant's train, he was kicked therefrom by a brakeman, it was not prejudicial error to ask plaintiff on cross-examination whether he did not know whether one of his companions on the ride had been convicted of burglary; he denying such knowledge, and not being contradicted.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1048.*]

4. RAILROADS (§ 282*)—INJURIES TO TRESPASSER—INSTRUCTIONS.

In an action for injuries to plaintiff who claimed that, while stealing a ride on defendant's train, he was kicked therefrom by a brakeman, if any one kicked plaintiff, it was, according to his evidence a brakeman who was on the top of the train about 15 cars back of the engine, and who gave signals. According to defendant's evidence, there was one brakeman on top of the train who was four or five cars back of the engine, and who, after signaling, went forward to the engine, and did not kick plaintiff. *Held*, that an instruction that if the brakeman who signaled did not go back of the sixth car, and, after signaling, went forward into the cab, plaintiff could not recover, was proper, though the evidence showed that there were several other train hands on the train.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 282.*]

Appeal from Trial Term, Westchester County.

Action by Charles Kruse against the New York Central & Hudson River Railroad Company.    Appeal by plaintiff from a judgment in favor of defendant, and from an order denying a motion for a new trial.    Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Thomas J. O'Neill (Leonard F. Fish, on the brief), for appellant. John F. Brennan, for respondent.

CARR, J.    The plaintiff appeals from a judgment dismissing his complaint, entered upon the verdict of a jury in favor of the defend-

ant. The plaintiff complains that, while he was stealing a ride upon a freight train of the defendant, he was kicked from a freight car by a brakeman who was on top of a box car. The injuries resulting to the plaintiff were most serious in character. He was mutilated severely, losing an arm, and sustaining other grievous physical injuries. He was a young married man of 22 years.

Practically the whole controversy at the trial centered about the question whether he had been kicked from the train by one of the defendant's trainmen. The evidence on this question was sharply conflicting. In addition to his own testimony, the plaintiff produced a companion, named Carroll, who was likewise stealing a ride upon the train. Both of these witnesses swore that plaintiff boarded one of the box cars while it was moving, and climbed up a stationary ladder at one end of the car, and that, when his head came above the top of the car, a brakeman came along from the rear of the train, on the tops of the box cars, and, after "hollering" at the plaintiff to get off, kicked the plaintiff in the face, thus dislodging him and causing him to lose his hold, and to fall to the track below, under the wheels of the moving train. The train in question was quite long, having, as the witness Carroll testified, about 30 cars, or, as the defendant's witnesses swore, about 50 cars. The occurrence in question is said to have taken place somewhere near the rear end of the train. The plaintiff gave no evidence to identify his assailant except as to his stature, and the fact that the brakeman who kicked him was coming forward from the rear end of the train. Carroll, however, identified the man as one who had stood upon the top of the train, towards its rear end, and who had been engaged in giving signs for the movement of the train, and who, while so signaling, was moving forward over the tops of the cars towards the engine. The proofs given on the part of the plaintiff showed but one trainman on the top of the train. The defendant produced all its men who were in charge of this train. According to their testimony, there was but one brakeman on its top, namely, one Butler. All of these men denied that either of them had kicked anybody on or from the train. Butler located himself on the top of a car in the forward part of the train, some four or five cars back from the engine. Some other witnesses were produced by the defendant who swore that they saw the train passing, and that but one man was on top of it, a brakeman, and they did not see him kick anybody at the time the train was passing at the place where the plaintiff was injured.

The case was tried with spirit by counsel of no little experience and resourcefulness. Whatever criticism may suggest itself to the mind of this court as to the conduct of the trial, it cannot be said that any possible point of attack or defense was overlooked by either counsel. Considering the conflict of testimony and the sharpness with which the issues were presented to the jury, there would be no justification for any interference by this court with the verdict of the jury on the questions of fact. The learned counsel for the plaintiff insists most earnestly that his client did not in fact have that fairness of trial which is the right of every litigant, and he specifies a number

of particular instances in which, as he claims, this unfairness was shown either by misconduct on the part of his adversary, or by the rulings of the trial court. An examination of the record shows that neither counsel was lacking in zeal. This quality, while necessary to every counsel, sometimes, when present in overabundance, tends to convert a courtroom into a cockpit, and is not at all helpful to that atmosphere of calm and of patient effort to sift out the truth which should mark every judicial inquiry. Neither the court nor the jury is helped at all by overcontentiousness or false emphasis. While everybody knows this well, not everybody keeps it in mind, and too often trials of fact tend to become mere struggles of voice and mind, aimed towards personal victory rather than to the ascertainment of truth for the purposes of justice between man and man. Yet an appellate court cannot reverse a judgment entered upon a verdict of a jury simply because counsel have been overzealous or overinsistent upon that which either may have considered as the turning point of the issue. This is a workaday world, and the rule of perfection controls no more in a courtroom than in the outer world. Between much zeal and prejudicial unfairness there is very appreciable difference.

[1] Let us see where and how the plaintiff has been aggrieved improperly, if at all, on the trial of the issues. The first ground of grievance is that the trial court permitted the defendant, just after the plaintiff had opened his case, to call to the witness stand one Roddy, and to ask him to identify his signature to a paper. This, of course, was out of regular order, but wherein it was prejudicial does not appear. The paper itself, neither then nor thereafter, was offered in evidence, and neither the jury nor this court knows anything about its contents.

[2] Next in order is the grievance of the plaintiff that, when his counsel thereupon asked this witness whether he, the witness, had not told the plaintiff's counsel that he "had not seen the actual accident," the question was excluded upon objection of the defendant. This exclusion was proper enough at that time, the witness had given no testimony whatever as to the accident, and the question did not tend to any contradiction of him in any way. At most, nothing but a signature was identified. The plaintiff could have called Roddy as his own witness at any time he chose to prove any fact which was material to the issue. It turned out, however, that he was not called again by either party. It is urged, however, that the defendant called Roddy at this stage of the case as a mere device in order that the jury might learn that it had a signed statement from Roddy, who was one of the plaintiff's companions in the ride-stealing enterprise, and might then infer that this signed statement was in favor of the defendant, unless the plaintiff called Roddy as his own witness. While this may not have been the defendant's purpose, yet, if it was, there was nothing to prevent the plaintiff from calling Roddy thereafter as his own witness, and showing that Roddy knew nothing about the matter. So far as the record goes, there is nothing in this incident which indicates reversible error.

[3] Much complaint is made that the defendant was permitted to ask the plaintiff on cross-examination whether he did not know wheth-

er his then companion, Roddy, had not been convicted of the crime of burglary. Whether Roddy had been convicted of burglary had no immediate bearing upon the fact of the alleged assault. It had, however, a bearing upon the question of the plaintiff's credibility as a witness, if he knowingly consorted with one who had been convicted of a serious crime. It appeared from the plaintiff's proofs that he and a number of young men from the east side of New York City had banded together to journey from the city to the upper central portion of the state, presumably looking for work, but obtaining their transportation by stealing rides on freight trains. The Legislature has made this method of locomotion a criminal offense. On his own, initiative the plaintiff testified as to the good character of his companions generally. So, on his cross-examination, it was not error to permit him to be asked whether he knew that one of them had been convicted theretofore of the crime of burglary. In any event, he denied such knowledge on his part, and no proof was offered to contradict him thereon, and we cannot speculate whether this incident affected the verdict of the jury improperly against him.

[4] Nor do we think that there is any substantial merit in the plaintiff's exception to the court's charge, upon the request of the defendant, at folio 630 of the record, which arose as follows: The defendant asked the court to charge:

"That if the jury believes that the brakeman who signaled did not go back of the fifth or sixth car and stayed there, and signaled to the engineer, and then, when this train started up, went immediately forward into the cab of the engine and remained there until the train got to Castleton, that, in that event, if they so find, the plaintiff cannot recover."

The court so charged, and the plaintiff excepted. No error was done in so charging, for there was no proof in the case that there was at any time more than one brakeman on the top of the train. If any one kicked the plaintiff off the train, it was, according to the plaintiff's proofs, a brakeman who was on the top of the train about fifteen cars back of the engine, and who had given signals to the engineer for the moving of the train. According to the defendant's proofs, there was a brakeman, Butler, on top of the train, but who was stationed four or five cars back of the engine, and who, after signaling, went forward to the engine, and who did not kick the plaintiff. The request of the defendant was but another form of instructing the jury that, if they found that Butler had not kicked the plaintiff, he could not recover a verdict. It is now insisted that, as the proofs showed that there were several other train hands on the train, the jury might have found that some one of these men other than Butler had kicked the plaintiff. To have so found would have been mere speculation, as the proofs were quite conclusive that no other train hand than Butler was on top of the cars at the time of the occurrence.

We have examined with care the remaining grounds advanced by the plaintiff as reasons why the judgment should be reversed, but we are unable to find reversible error therein. The dreadful injuries suffered by the plaintiff require a patient examination of his appeal

from the verdict of a jury, but they should not justify any decision on the part of this court which rests upon a basis purely sympathetic.

The judgment and order denying the motion for a new trial should be affirmed, with costs.

THOMAS and WOODWARD, JJ., concur. JENKS, P. J., and HIRSCHBERG, J., concur in result.