**COURT OF APPEALS,**

March 14, 1913.

# THE PEOPLE v. STANISLAO PETTANZA.

(207 N. Y. 560.)

(1.) KIDNAPPING *—SUFFICIENCY OF EVIDENCE.

A defendant, charged with a criminal offense, must be prosecuted according to the forms of law, and his guilt must be established, if at all, by legal evidence, no matter what his origin, his station in life, or his associates may have been, and no matter what other offenses he may have committed. The atrocity of the crime charged does not justify a disregard of rules of law, firmly established in our jurisprudence for the protection of all alike.

(2.) SAME—RECORD EXAMINED AND EVIDENCE HELD INSUFFICIENT.

The record upon the trial of a defendant indicted for kidnapping a boy eight years of age, examined, and *held*, that the judgment of conviction must be reversed; that there is no direct evidence tending to connect defendant with the crime charged, and that the evidence of extraneous acts and crimes of defendant, introduced in the attempt to implicate him in the kidnapping, is incompetent and illegal. The defendant cannot be convicted of such crime because his sister was intimate with the family by whom the kidnapped boy was detained, or had herself been concerned in another kidnapping case, or because defendant unlawfully had dynamite in his possession, an offense with which he was not charged, or because he was acquainted with a man whose picture was in the "Rogues' Gallery," and who had sent "Black Hand" letters and committed other misdeeds, where there is no evidence showing that the acts and offenses proved were related to or connected with the crime with which he is charged.

*People* v. *Pettanza*, 145 App. Div. 944, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June

---

* See Note on Kidnapping, 22-222.

27, 1911, which affirmed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of kidnapping.

The facts, so far as material, are stated in the opinion.

*Charles W. Gould* for appellant. The crime of kidnapping has not been established as against this defendant; defendant has not been connected as a principal with the commission of the crime. (Penal Law, § 1250; McCarney v. People, 83 N. Y. 408; People v. Pisano, 127 N. Y. Supp. 205.) Defendant has not been proven guilty beyond a reasonable doubt; the evidence only tends to prove acts that took place after the conspiracy was formed and is insufficient to sustain the verdict. (People v. Brickner, 15 N. Y. Supp. 528; People v. Razezicz, 206 N. Y. 249; People v. Bennett, 49 N. Y. 137; People v. Smith, 162 N. Y. 529; People v. Bonfacio, 190 N. Y. 150.) The defendant did not have a fair and impartial trial. The district attorney's conduct on the trial was unfair to defendant. An appeal was made by the district attorney to the jury during the whole case and especially in the cross-examination of defendant's witnesses, to excite prejudice against the defendant and his defense, rather than to the elucidation of the question of the guilt or innocence of defendant. (People v. Cascone, 185 N. Y. 317; People v. Pisano, 127 N. Y. 204; People v. Acardo, 125 N. Y. Supp. 502; Philpot v. Fifth Avenue Coach Co., N. Y. L. J. March 7, 1911; Frahm v. Siegel Cooper Co., 116 N. Y. Supp 90; Hoag v. Wright, 34 App. Div. 260; Rothschild v. Weingreen, 121 N. Y. Supp, 234; People v. Hinksman, 192 N. Y. 421; Potter v. Browne, 199 N. Y. 288.)

*James C. Cropsey, District Attorney (Hersey Egginton* and *Edward A. Freshman* of counsel), for respondent. The defendant had a fair trial and no prejudicial error affecting

the substantial rights of the appellant appears in the record. (40 Cyc. of L. & P. 2488, 2489; Wharton's Crim. Ev. [10th ed.] 47; 3 Wigmore on Ev. § 1730; 2 Wigmore on Ev. § 949.)

MILLER, J. The decision of the Appellate Division was unanimous, but it is necessary to look into the facts to appreciate the effect of the rulings complained of. On the 19th of November, 1910, Joseph Longo, an eight-year old boy, was enticed from near his home at 186 Twenty-fifth street, Brooklyn, and taken to 330 East Sixty-third street, Manhattan, where he was found by an officer on December 8, 1910, in rooms consisting of a kitchen and bedroom, occupied by one Vito Sirisi and his wife, and their two small children. In the interval, his father, Francisco Longo, received four so-called "Black Hand" letters demanding a ransom of $15,000. Two unidentified men did the taking. The boy, however, knew one of them, who lived in the neighborhood of his home. There was no direct evidence tending to connect the defendant with the taking. The boy testified that the third day after the kidnapping, the defendant called at Sirisi's rooms, knocked, said something like "peep" and, when admitted, conversed with Sirisi, inquired of the boy his name and address, and wrote in a book; and that he called on two subsequent occasions, once with another man, and held conversations with Sirisi which the boy was not permitted to hear. When the boy was found by the officer and taken down to the street, he pointed out the defendant in the crowd which congregated. The officer testified that thereupon the defendant started to run away but was overhauled by him in two steps. When arrested, the defendant denied knowing the boy and told a rather vague and unconvincing story in an attempt to account for the boy's recognition of him. The defendant with his family occupied rooms in the rear of No. 334 East Sixty-third street. One Castelli and his wife lived in 332 East Sixty-third street.

The latter's rooms were connected with Sirisi's by a fire escape and the Longo boy testified that the Castellis and the Sirisis were in the habit of going to and from each other's rooms by means of the fire escape. Two photographs were found in the defendant's rooms, one of the Castellis and the other of the Sirisis and their two children. Eliminating the objectionable evidence, hereinafter discussed, the foregoing is an epitome of the case as made by the People. No attempt was made to prove that the defendant wrote the threatening letters, although the district attorney had a sample of the defendant's handwriting written from the dictation of one of them. The defendant, as a part of his case, put that sample in evidence, and the district attorney now urges that a comparison will show that it was written in the same hand as the said letters. The People's theory is that the defendant asked the boy his name and address to learn where to send them. In that connection the relative dates of that inquiry and the mailing of the first letter were important. The postmark would have shown when the letter was mailed, but, though the district attorney had the envelope, he did not offer it in evidence, and when the defendant called for it he was unable to produce it.

A six-year old boy, Michael Rizzo, who lived in the same neighborhood as the Longo boy, was called by the People, and, without being sworn, was allowed to tell a story of being kidnapped and taken first to a room in No. 364 East Sixty-third street, not one of the rooms occupied by the defendant, and later to the Castellis' rooms in No. 362. It did not appear when that kidnapping occurred and there was no evidence tending to show that there was any connection between the two cases or that the defendant was in any way connected with the case of the Rizzo boy. That entire story was received over the objection that it was " incompetent, immaterial and not pertinent to the issue." The district attorney gave the lame reason for calling the Rizzo boy that he was a witness

" as to certain conditions," and he had him identify the Castellis by the photograph found in the defendant's room and describe their apparent intimacy with the Sirisis, their going back and forth by the fire escape.  It was brought out on the cross-examination of the defendant that Mrs. Castelli was his sister and that the Sirisis, the Castellis and he came to this country from Borghetto, Sicily.  It is unnecessary to discuss the proposition that it would have been error to allow the People to prove the commission by the defendant of an isolated and independent crime even of the same character.  (People v. Molineux, 168 N. Y. 264, 16 N. Y. Crim. 120.)  Manifestly, it was error to allow proof that the defendant's sister was concerned in the commission of an unrelated, but similar, crime, and it was grossly improper for the district attorney to call a six-year old boy to make such proof on the pretense that he wanted to prove " certain conditions " by him.  The error was intensified by the court in charging the jury as follows:

" The testimony received in this trial bearing upon the alleged kidnapping of Michael Rizzo, who was taken from Brooklyn to No. 334 East 63rd Street, the house in which this defendant lived, and then a few days after taken to the house No. 332 East 63rd Street, the adjoining house, the house in which the half sister of this defendant and her husband lived, and there placed under their custody and control, was in support of the contention of the People through the learned District Attorney that those acts taken together with the charges set forth in the indictment, if committed, were part of a common scheme or plan or practice or enterprise embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the other.  Proof of extraneous crimes must be excluded unless there is evidence of system between the offense on trial and the one sought to be introduced.  The People contend that the alleged transactions relative to Michael Rizzo were connected with

the alleged accusations as set forth in the indictment as part
of a general and composite plan or scheme or practice or en-
terprise, carried on by the defendant and that the acts were
so related to each other as to show a common motive or intent
running through both."

The difficulty with the theory suggested by the learned court
is that there is not a suggestion of evidence to support it, and
the district attorney did not advance it when offering the evi-
dence, whatever he may have said in his summation.    That
part of the charge was not excepted to.   However, there would
have been no occasion to make it, but for the error in receiv-
ing the evidence.

While perhaps the most harmful, the error just considered
is only one of many committed on the trial as the result of an
obvious effort by the district attorney to make up for the
weakness of the People's case by surrounding the defendant
with an atmosphere of criminality, which might lead the jury
to think that he would not be convicted amiss, whether inno-
cent or guilty of the particular crime charged.   If there is
such a marked similarity between the defendant's handwrit-
ing and that of the threatening letters, as the district attorney
now urges, but made no attempt to prove on the trial, it should
have been easy, and it should be easy on a new trial, to prove
the defendant's guilt by legal evidence.   A bare statement of
what the record shows with respect to some of the other errors
will suffice.

When the officer who searched the defendant's rooms after
the arrest was on the stand, he was shown an article, and was
allowed without objection to state that he found it in the de-
fendant's rooms, took it to the bureau of combustibles to be
analyzed, and kept it in water.   An objection then being made,
the district attorney consented that the evidence be stricken
out.   He apparently feared, however, that the jury had not
yet appreciated that the article was dynamite, and so, for no

other conceivable purpose except to have more time to flourish it before the jury, he again exhibited it to the witness, who, over objection and exception, was again allowed to state where and how it was found, whereupon the district attorney offered " the substance   *   *   *   for identification," and upon the objection being repeated, withdrew the offer, and again consented that the evidence be stricken out.   The defendant called as a character witness one John Buzzuffi, who at one time was his landlord and owned the houses Nos. 330, 332 and 334.   At the outset of the cross-examination the district attorney elicited the statement that No. 330 was dynamited about two years before.

That witness had stated on direct examination that one Salamoni knew the defendant.   On cross-examination the district attorney was allowed to ask if, just before the dynamiting of No. 330, Salamoni had not demanded and been refused a lease of the three houses.   The witness answered " No " to that question, but he said that he leased the houses to Salamoni— he was not exactly sure when, but " two years ago about." He was then interrogated at length about Salamoni, and such questions as the following were allowed:

" Q. Don't you know that Salamoni has been arrested twenty times and his picture is in the Rogues Gallery?

" Objected to as incompetent, irrelevant and immaterial. Objection overruled.   Exception.

" A. I know that, yes.   *   *   *

" Q. When did the Black Hand letters cease to come to you, what date? "

" Objected to as incompetent, immaterial and improper cross-examination.   Objection overruled.   Exception."

The answer in substance was that the witness turned the three houses over to Salamoni about two years ago, " after the bomb," and that he received no Black Hand letters after that, and that Salamoni and the defendant were countrymen.

It is manifest that the foregoing are not in the category of technical errors, not affecting the substantial rights of the parties, which are to be disregarded on appeal. Any native of Sicily, who lived in the same neighborhood and knew the Sirisis and the Castellis well enough to call upon them and have their photographs, could have been convicted by such methods, however innocent he might have been of the crime charged. An argument is addressed to us, based on the assumption that the nature of the crime tends to excuse, if not wholly to justify, resort to such methods. But the atrocity of the crime charged does not justify a disregard of rules of law, firmly established in our jurisprudence for the protection of all alike. The defendant was not to be convicted of the crime of kidnapping the Longo boy, with which he was charged, because his sister was intimate with the Sirisis, or had herself been concerned in another kidnapping case, or because he unlawfully had dynamite in his possession, an offense with which he was not charged, or because he was acquainted with a man of the same nationality, whose picture was in the " Rogues Gallery " and who had sent Black Hand letters and committed other misdeeds. A defendant, charged with a criminal offense, must be prosecuted according to the forms of law and his guilt must be established, if at all, by legal evidence, no matter what his origin, his station in life, or his associations may have been, and no matter what other offenses he may have committed.

The judgment of conviction should be reversed and a new trial ordered.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK and HOGGAN, JJ., concur; CUDDEBACK, J., dissents.

Judgment of conviction reversed, etc.