# SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

## February 7, 1917.

## THE PEOPLE v. JOHN J. JOHNSTON.

### (186 App. Div. 248.)

(1.) FORGERY*—CROSS-EXAMINATION OF DEFENDANT WHO TAKES STAND IN HIS OWN BEHALF—WHEN LETTER WRITTEN BY THIRD PERSON RELATING TO ANOTHER CRIME NOT ADMISSIBLE.

Where upon a prosecution for the crime of forgery the defendant takes the stand in his own behalf, a letter written by a third person from which the jury can draw the inference that in a matter entirely foreign to the case the defendant had contributed money which the third party was to use to bribe witnesses to testify falsely relating to the other matter, is not admissible either to prove that the defendant had been guilty of another offense or that he was an associate of criminals.

(2.) SAME.

The admission of such letter over objection and exception of the defendant, which was aggravated by the comments of the trial judge at the time of the admission and accentuated by his charge, constituted reversible error.

(3.) SAME—CROSS-EXAMINATION AS TO COLLATERAL FACTS.

Where a defendant takes the stand in his own behalf, he thereby subjects himself to cross-examination to the same extent as any other witness.

(4.) SAME—WHEN DEFENDANT'S CHARACTER SUBJECT TO INQUIRY.

A witness may be specially interrogated upon cross-examination in regard to any vicious or criminal act of his life and may be compelled to answer unless he claims his privilege. While the extent to which the adverse party may cross-examine into these collateral facts is within the sound discretion of the judge presiding at the trial, a limitation naturally suggests itself that the examination should tend to show that the witness was not entitled to belief. For by taking the stand in his own behalf,

---

\* See notes, Vol. 24, p. 351; Vol. 35, p. 435.

the defendant does not put his character in issue, generally; he merely offers himself as a person whose testimony is entitled to be believed, and his character for truth and veracity is liable to be impeached.

(5.) SAME.

    In a criminal case a defendant's character is not subject to inquiry unless he has made it an issue by offering evidence of his good character. SMITH, J., dissented, with opinion.

APPEAL by the defendant, John J. Johnston, from a judgment of the Court of General Sessions of the Peace in and for the county of New York, rendered against him on the 28th day of February, 1917, convicting him of the crime of forgery in the second degree.

*Clark L. Jordan,* for the appellant.

*Robert S. Johnstone, Assistant District Attorney (Edward Swann, District Attorney),* for the respondent.

PAGE, J.:

In my opinion the admission of the letter of Leo Stein, over the objection and exception of the defendant, constitutes reversible error which was aggravated by the comments of the trial judge at the time of the admission, and accentuated by his charge. When the defendant takes the stand in his own behalf he thereby subjects himself to cross-examination to the same extent as any other witness. The rule in this State is that a witness may be specially interrogated upon cross-examination in regard to any vicious or criminal act of his life, and may be compelled to answer unless he claims his privilege. (People v. Hinksman, 192 N. Y. 421, 433, 22 N. Y. Crim. 585.) While the extent to which the adverse party may cross-examine into these collateral facts is within the sound discretion of the judge presiding at the trial, a limitation naturally suggests itself that the examination should tend to show that the witness was not entitled to belief. For by taking

the stand in his own behalf the defendant does not put his character in issue, generally; he merely offers himself as a person whose testimony is entitled to be believed, and his character for truth and veracity is liable to be impeached. In a criminal case a defendant's general character is not subject to inquiry unless he has made it an issue by offering evidence of his good character. (People v. Richardson, 222 N. Y. 103, 107.) The vice in the present case was not, however, in the questions asked by the assistant district attorney, but in the reception of the letter in evidence as a part of the cross-examination. The letter had no relevancy or materiality to the issues before the court, nor was the inference that the fifty dollars asked for was to be used to get two witnesses to testify falsely the only one which could be drawn. An inference that the money was necessary to pay the legitimate expenses of the witness was just as reasonable. In fact, although the judge was very free to express his view that the first was the inference that he drew, and that was the only reason that he admitted the letter in evidence, nevertheless, he recognized that an innocent construction was possible, and he left it to the jury, as one of the issues in this case to be determined, whether the defendant had by complying with the request in the letter committeed " a criminal act, a vicious, immoral act." It may be that, as bearing upon the defendant's credibility, he could have been asked whether he had sent money to one Leo Stein for the purpose of hiring two witnesses to testify falsely; and if he had denied it, the district attorney would have been concluded by the answer, and would have had no right to contradict it. (People v. De Garmo, 179 N. Y. 130, 135, 18 N. Y. Crim. 430.) The reason that the contradiction is not allowed is that thereby a collateral issue would be brought into the case. In the instant case the questions were not asked, but the letter written by a third person was offered as evidence of the fact, or at least from which the jury could draw the infer-

ence of the fact, that in a matter entirely foreign to the case at bar the defendant had contributed money which the third party was to use to bribe witnesses to testify falsely relating to the other matter. The books will be searched in vain for a precedent for such a perversion of the rules of evidence. Stein could not have been allowed to testify to such facts. (Hall v. U. S. Radiator Co., 76 App. Div. 504.) To admit his letter in evidence is to receive hearsay, when direct evidence would not have been allowed. (People . Dorthy, 156 N. Y. 237, 243.)

But further, it is claimed that the letter was properly admitted to show that the defendant was an associate of criminals. Two cases are cited as authorities. (People v. Katz, 209 N. Y. 311, 331, 30 N. Y. Crim. 373; Kruse v. N. Y. C. & H. R. R. R. Co., 146 App. Div. 485, 489.) In the Katz case the defendant had given evidence of his good character and the court said: "Since the defendant was stoutly protesting his innocence and throwing his previous good character into the balance, it was also proper to show that the defendant was associating with men like Persch and Adams and Aldhouse, about whose antecedents he had made no inquiry, and who were engaged in transactions which resulted in criminal prosecutions." In the instant case the defendant did not throw "his previous good character into the balance." The Kruse case was an action for personal injuries sustained by the plaintiff, who with others was stealing a ride on one of the defendant's freight trains. The plaintiff, on his direct examination, had testified to the good character of his companions generally. On cross-examination he was asked whether he did not know that Roddy, one of his three companions, had been convicted of the crime of burglary. The court said that this question had "a bearing upon the question of the plaintiff's credibility as a witness, if he knowingly consorted with one who had been convicted of a serious crime." This statement was immediately shown to be mere *obiter dictum*, for the court

23

said: "In any event he denied such knowledge on his part, and no proof was offered to contradict him thereon, and we cannot speculate whether this incident affected the verdict of the jury improperly against him." In the case of People v. Pettanza (207 N. Y. 560, 566, 567) a witness called by the defendant to testify as to his good character was asked whether he did not know that Salamoni, an acquaintance of the defendant, had been arrested twenty times and that his picture was in the Rogues Gallery. The court said of this and other questions tending to show that the defendant had associated with criminals, " a defendant charged with a criminal offense must be prosecuted according to the forms of law, and his guilt must be established, if at all, by legal evidence, no matter what his origin, his station in life, or his associations may have been, and no matter what other offenses he may have committeed," and in another part of the opinion the court thus states the obvious purpose of offering such evidence (p. 565) : That " by surrounding the defendant with an atmosphere of criminality, which might lead the jury to think that he would not be convicted amiss, whether innocent or guilty of the particular crime charged."

In my opinion we should not extend the well-settled limitations prescribed for the admissibility of evidence in criminal cases merely for the reason that it is easier for the public prosecutor to obtain convictions if such limitations were removed. In my opinion the letter was not admissible either to prove that the defendant had been guilty of another offense, or that he was an associate of criminals. Judge WERNER, in People v. Molineux (168 N. Y. 264, 309, 16 N. Y. Crim. 120), quoted with approval the statement in Shaffner v. Commonwealth (72 Penn. St. 60) with reference to the reception in evidence of another criminal act alleged to have been committed by the defendant unless there was some connection with the crime charged in the indictment: " Without this obvious connection

it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burthen a trial with multiplied issues that tend to confuse and mislead the jury. The most guilty criminal may be innocent of other offenses charged against him, of which, if fairly tried, he might acquit himself. From the nature and prejudicial character of such evidence, it is obvious that it should not be received, unless the mind plainly perceives that the commission of the one tends, by visible connection, to prove the commission of the other by the prisoner. If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner instead of suffering the minds of the jurors to be prejudiced by an independent fact carrying with it no proper evidence of the particular guilt." Judge WERNER's opinion continues: "This statement voices the keynote of the distinction between the civil law and our own more merciful common law. Under the former there is no presumption of innocence. A mere official charge of crime puts the accused upon his defense. His history is an open book, every page of which may be read in evidence by the prosecution. Every crime or indiscretion of his life may be laid bare to feed the presumption of guilt. How different is our own common law, which is the product of all the wisdom and humanity of all the ages. Under it the accused comes into a court of justice, panoplied in the presumption of innocence, which shields him until his guilt is established beyond a reasonable doubt. His general character can be thrown into the balance by no one but himself. The incidents of his life, not connected with the crime charged, are his sacred possession. He faces his accuser in the light of a distinct charge, with the assurance that no other will be, or can be, proved against him." The admission of this letter in evidence in the present case was not an immaterial error, but was highly prejudicial and violated a fundamental rule of law.

· The judge in his charge gave the worst construction possible to the letter as his opinion of the inference to be drawn from it, and then stated: "Of course, there is the presumption that the man in prison was innocent." He immediately deprived the defendant of the benefit of this presumption by saying, "but innocent men do not seek to get witnesses by improper means or resort to perjury to get them out." Then the trial judge submitted the issue as to the inference that might be drawn from the letter by charging, "you, of course, are to say whether that claim of the People is supported or not. If you do not find that was the intent of the letter, the purport of the letter, then give it no weight. If it has been shown that he associated with other criminals you may also consider that on the question of his credibility." This was manifestly erroneous. An issue was thus submitted to the jury that had no relevancy to the issue it was to determine. These errors in the admission of the letter in evidence and in the charge were highly prejudicial to the defendant.

The judgment should be reversed and a new trial granted.

CLARKE, P. J., LAUGHLIN and MERRELL, JJ., concurred; SMITH, J., dissented.

SMITH, J. (dissenting):

In June, 1913, Emil Robitzek, before starting for Europe, purchased a number of checks from the American Express Company, known as treveler's checks, and among them was the check set forth in the indictment. The checks purchased by Mr. Robitzek amounted to $1,500 and were in denominations of $100, $20 and $10. He went on board the steamer, and upon looking for his checks failed to find them and never saw any of them until they were shown to him by an officer in connection with this case. A rule of the American Express Company required the purchaser of checks to write his name on the

upper part of the check, at the left hand, for the purpose of identification, and when they are negotiated it is necessary for the purchaser to write his name on the check, and the signatures must correspond. Mr. Robitzek testified that he had not put the second signature on the traveler's checks and never authorized any one to do so for him and never cashed them. While the forgery of the second name was so accurate that Mr. Robitzek upon the witness stand was himself confused as to which signature was his and which was forged, there was clearly sufficient evidence for the jury to find that the second signature was in all instances forged. These checks nowhere appeared from June, 1913, until September, 1916, when it appeared that the defendant had possession of ten of these checks for $100 each. The evidence of the defendant is to the effect that upon the 15th day of September, 1916, while playing cards at Atlantic City, he won these checks. He brought them to New York and upon the 7th day of October, 1916, he had five of these checks cashed at different stores in the city, and his wife, at his instance, had the other five cashed, their plan being to go to a store and order goods to the amount of from eight to eighteen dollars, tender the checks and receive the balance in cash. This they succeeded in doing with the ten checks. The defendant swears that he and his wife were about to go to Cuba and that that was the purpose of having these checks cashed. When cashing the checks he was required, at least in two instances, to give his name and address. In both of those instances he gave a false name, and a different name in each instance. The evidence does not show what he did in respect to the other checks in reference to representation as to his name and address. He might have gone to the express company in New York City to get the money on these checks, or he might have gone to a bank for the same purpose. His method, however, of cashing the checks upon buying a small amount of merchandise, and the giving of a false name and a false address

in the two instances named, is strong circumstantial evidence to the effect that he had knowledge of the fact that these checks were forged and that he was not in lawful possession of them when he negotiated them.    It is for the negotiation of one of these checks that the defendant has been convicted.

Upon the trial the defendant took the witness stand in his own behalf.    Upon his cross-examination the district attorney presented to him a letter and asked him if he had received that letter.    His answer was that he had.    He was then asked if he had sent to the writer of the letter fifty dollars as therein requested.    He answered that he had, and he was asked if he had sent it for the purpose indicated in the letter, and he answered yes.    The letter was one written by a man by the name of Leo Stein, who was in jail in California awaiting his trial upon some criminal charge.    The letter is as follows:

" Mr. JIM JOHNSON,

" c/o West Hotel,

" Winnipeg, Man.

" FRIEND JIM.— I am back in the Frisco County jail under the old ' Leo Stein.'    I was brought back from Columbus, Ohio and The Stir door.

" Now Jim I have long since exhausted my funds for the expenses of my case.    I am flat broke and my trial is set for Jan. 15th, 1914.    Now if I could beat this case it would clean you.    However, if I (over) am convicted you are as good as convicted if they can get you?    They spent about $500 to bring me back and they now have your record here and will, of course, spend any amount to bring you back.

" Canada could not stop you from being brought out of there.    However, I believe I can beat my case if I had a couple of witnesses.    I have advertised for weeks, and have had no return from that full car.    I was just about discouraged when a kindly act found two witnesses whose evidence should

clear me.    But they require no less than $25 a piece, or no less than $50, Fifty dollars for both of them.

" Now Jim Judge Cabaniss frankly told me that with my priors he could give me life if I was found guilty by a jury. And that if I stood trial I ought to expect the limit after ungratefully running away.    However, that if I plead guilty he would have the priors withdrawn and give me ten years.

" Now I am awfully lucky to have found two witnesses and Jim it would be an awful shame (over) to have to go to trial without them for the sake of Fifty dollars?    It is of great material benefit for you to have Bejington made a liar in my case? and to win my case is to win yours?    Therefore, Jim, for God's sake beg, borrow or steal this $50 and send it by wire at once, for time is valuable and I am to be trial on Jan. 15th, 1914.

" If you fail me I am lost, I know of no one else I can get a cent from.    And Jim, if you fail because of mercenary motives you will never have a day's luck.    You will have let me gone to stir for the sake of $50 Fifty dollars.    Boots sent you this much and you who are in on the fall have let me go to stir for the like amount.

" I shall make it my business to learn if you were where you should have got this letter in time.

" I shall be buried, and for $50.    However, you may be brought back here and these witnesses may have beat both our cases.

" Wire this money on at once, I will make every cent good to you.    Now Jim, a friend of mine and of yours, and of Burns is up for probation.    He is referring them to Mr. Burns of the West Hotel for his character, since he told the Judge he had worked as cook for Mr. Burns at the West Hotel from March 1906 to October 1911.    This man's name is Henry Miller is about 5 foot 8 in. 175 lb. brown eyes and is 29 years old.

He is a cook, and worked for Mr. Burns West Hotel in that capacity.

" Tell Mr. Burns by answering any letter of inquiry as to his character, employment etc. he will be favoring the Jap and Tarlo."

This letter was then offered in evidence by the People and was objected to very strenuously by the defendant's counsel. The court thereupon remarked: " He says he responded to it with a payment of $50 to get two witnesses to testify falsely, the inference is. That is the only reason I will let it .go to the jury. * * * It is clearly admissible, and that is the only purpose for which I admit it. It is a question of fact for the jury. If they determine that letter indicates that he was paying money to get two witnesses to defeat justice, that is a crime. If it was an act of charity or kindness it was not a crime." The defendant's counsel then said: " I submit that there is not a thing in here that indicates it was for the purposes of defeating justice." The Court: " I do not agree with you." The letter was thereupon admitted as bearing upon the witness' credibility, and the court stated: " The defendant stated that he received it and acted upon it and sent $50 as requested, and it is for the jury to say whether or not that is a criminal, vicious or immoral act. If it is not, it is not binding upon him. It does not prove he forged or passed these checks, but it is a question to be taken into account as to what weight they will give his testimony. They are entitled to know what kind of man he is. An arrest means nothing, but even criminal and vicious acts which have not resulted in a conviction may be called to the attention of the witness on the question of his credibility." To this an exception was taken.

In the charge the court referred to this letter and said: " There is a letter in evidence which I permitted to go to you on the theory that it showed that he was the associate of a man who was in prison charged with a crime and that he was

associating with criminals. That letter having been read by him and received by him and acted upon by him is binding on him, if you find that it is an expression or attempt on the part of the man in prison to have him commit any criminal act. Of course, there is the presumption that the man in prison was innocent. You understand that, but innocent men do not seek to get witnesses by improper means or resort to perjury to get them out. That is why that letter was admitted, as intimating a desire, as claimed by the People, to buy witnesses, and if the defendant supplied money for that purpose it was a criminal act, a vicious, immoral act. You, of course, are to say whether that claim of the People is supported or not. If you do not find that was the intent of the letter, the purport of the letter, then give it no weight. If it has been shown that he associated with other criminals you may also consider that on the question of his credibility."

The admissibility of this letter is of large importance, both to the People and to the defendant. Its importance to the defendant lies in the fact that its admission well nigh compelled his conviction. It indicated in the first place that the defendant was an associate of the criminal class, that the defendant's friend, who was asking the loan of fifty dollars, was "back in the Frisco County jail." He had been there before. The letter recites that a judge had told him that " with my priors he could give me life if I was found guilty by a jury." This indicates a prior criminal record. The letter states that if the writer is convicted the defendant himself is " as good as convicted if (the officers) can get you," which indicates that the defendant had been associated with this criminal in some act which had resulted in a criminal prosecution. The terms used in the letter are the terms of a criminal, and defendant is appealed to as a friend and also for his own selfish purposes to protect himself from criminal conviction, and the letter requests the loan of fifty dollars to procure two witnesses who will

enable him to "beat (his) case" when he is brought to trial. With this letter in the case the credibility of his testimony is at once irretrievably impeached and his conviction becomes a well nigh certainty, so that the importance of this question to the defendant is beyond doubt.

The importance to the People also of the admissibility of this testimony is great. It is not the conviction of this defendant which is so important, but if this evidence be held incompetent the public prosecutor is closely limited in what he may offer to affect the credibility of a defendant who takes the witness stand in his own behalf and the discretion of the trial court is largely restricted. The general rule is unquestioned that it is within the discretion of the trial court as to how far a witness may be asked questions which tend to discredit his testimony, and it has been held that greater latitude is allowed in the cross-examination of a defendant who offers himself as a witness than in the case of a third party thus appearing. (People v. Braun, 158 N. Y. 558, 569.) It has been held proper upon cross-examination to show that a defendant offering himself as a witness was an associate of criminals. (Kruse v. N. Y. C. & H. R. R. R. Co., 146 App. Div. 485, 489.) It has also been held proper to show that the defendant was knowingly associating with persons "who were engaged in transactions which resulted in criminal prosecutions." (People v. Katz, 209 N. Y. 311, 331, 30 N. Y. Crim. 373.) Any act of the defendant which, in the judgment of the court, may indicate lack of moral responsibility may be inquired into in the discretion of the court, of the defendant himself, upon cross-examination, when he has offered himself as a witness in the case. To this point I have considered the admissibility of this letter as showing that the defendant associated with criminals and law-breakers. For that purpose at least it was admissible. In my judgment it was further admissible for the jury to determine as affecting the defendant's

credibility, whether the defendant had not committed another crime in supplying money for the subornation of perjury. It is true that the presumption is of innocence, but I venture that as a matter of first impression the fair construction of that letter is a request for money in order to suborn witnesses. The question was submitted to the jury whether that was a proper construction of the letter, and they were told that if in their judgment it was not a proper construction of the letter they were to give it no force as an impeachment of the witness by reason of such claim on the part of the People. The jury were told that the evidence was admissible simply as bearing upon the credibility of the defendant, and that it constituted no affirmative evidence that the defendant was guilty of the crime for which he was being tried. The court may be subject to some criticism for having expressed positively his own opinion as to the construction of the letter, but that has been held not to be error, where the jury was told that it was their construction that was to govern. It is said that defendant may have sent the money through fear from the implied threat in the last of the letter. If so, he could have sworn to that fact. He was at liberty to make any explanation relative to the statements contained in the letter that might tend to his exculpation, but this he entirely neglected to do. The letter was not competent if merely found upon his person, but when he swore that he sent that money for the purposes mentioned in that letter, the letter itself became competent in order that the jury might judge of the nature and quality of the act, and whether the quality of the act was such as would tend to discredit the testimony he had given in his own defense.

I do not in any way question the rules laid down in the cases cited by Mr. Justice PAGE in the prevailing opinion. The rule as stated by Judge WERNER in the case of People v. Molineux (168 N. Y. 264, 309, 16 N. Y. Crim. 168) was there stated in reference to affirmative evidence of another

crime offered in the first instance, and not introduced in evidence upon the defendant's cross-examination. It is true it is there stated that it would be " unjust to the prisoner to compel him to acquit himself of two offenses instead of one," and " is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury," but in a qualified way this question is always presented upon the cross-examination of a defendant who takes the stand as a witness in his own behalf. A witness can always be asked if he had been guilty of another crime, whether or not convicted thereof, to impeach his credibility, and his answer thereto might bring into the case another issue upon which he would be called upon to justify himself or to make explanation. A witness may always be asked if he had been convicted of another crime for the purpose of impairing his credibility, and in such case a witness would be called upon to justify his action in the case in which he had been convicted. The very essence of the right of cross-examination for the purpose of impairing credibility involves of necessity the introduction through the witness himself of the criminating facts asked about and the confusion necessarily incident thereto. And yet, the right thus to cross-examine a party offering himself as a witness is an established one. If this witness had written a letter, sending fifty dollars and telling Stein to use that for the purpose of procuring witnesses to help him in his case, is there any doubt that the district attorney could have shown him the letter, and upon his admission that it was in his handwriting, have introduced it in evidence ? The district attorney is not bound by the witness' first answer, but, within the discretion of the court, may probe the witness to find whether he had been guilty of former crimes for the purpose of impeaching his testimony. If, as suggested, such a letter had been written by the witness and he admitted its authenticity and that letter could have been offered in evidence, I am unable to see, when he swears that he received this letter

from Stein, that he sent the money for the purposes therein specified, why this letter would not be equally competent. If the letter contains other matters than those as to which he had been interrogated, objection might be made to those parts of the letter, but no such objection was here made. The only objection was to the letter in its entirety. It cannot be said in my opinion that the trial judge abused his discretion in admitted the letter in evidence, and the judgment of conviction should be affirmed.

Judgment reversed and new trial ordered. Order to be settled on notice.